IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01493-PSF-CBS

S. J. GLAUSER DCJB, L.L.C. a Colorado limited liability company,

      Plaintiff,

v.

PORSCHE CARS NORTH AMERICA, INC., a Delaware limited liability company,

      Defendant.

---

## ORDER ON PENDING MOTIONS

---

This matter comes before the Court on Defendant Porche Cars North America,

Inc.'s Motion to Dismiss plaintiff's complaint (Dkt. # 13), filed September 23, 2005, and

defendant's Motion to Dismiss the Amended Complaint (Dkt. # 25), filed November 21,

2005.  As described below, the motions are fully briefed and ripe for determination.

The Court has determined that oral argument will not be of material assistance.

## I.    BACKGROUND

On August 5, 2005, Plaintiff S. J. Glauser DCJB, L.L.C., a company apparently

engaged in business as a retail automobile dealer of Mercedes brand automobiles (*see*

Complaint, ¶ 18; Amended Complaint, ¶ 1) filed its original Complaint (Dkt. # 1) alleging

four claims for relief against Defendant Porsche Cars North America, Inc. ("PCNA"),

apparently a distributor of the Porsche brand automobile in the United States.  Plaintiff

averred that PCNA, by refusing to approve the transfer of a Boulder, Colorado Porsche

dealership from Stammler Imports, Inc. ("Stammler"), owned by Adolph Stammler, to

plaintiff, and allow for a change of its location, had violated the Colorado Automobile

Dealers Act, C.R.S. § 12-6-108 (First Claim for Relief), had tortiously interfered with the

contract of sale between Stammler and plaintiff (Second Claim for Relief), had violated

the Section 1 of the Sherman Act, 15 U.S.C. § 1 (Third Claim for Relief) and had

violated the Colorado Antitrust Act, particularly C.R.S. § 6-4-104 (Fourth Claim for

Relief).

Defendant PCNA did not file an answer.  Instead, on September 23, 2005, it

filed its Motion to Dismiss the Complaint (Dkt. # 13) along with Exhibits A, B and C.

The motion asserts that plaintiff had failed to state a claim for relief under all four of its

alleged theories, and seeks dismissal pursuant to F.R.Civ.P. 12(b)(6).

Plaintiff did not file a substantive opposition to the motion.  Instead, on

November 4, 2005, it filed a First Amended Complaint (Dkt. # 21) that asserts the same

four claims for relief, although in a different order, as well as additional paragraphs of

factual allegations along with Exhibits 1 through 6.  On the same day, plaintiff also filed

a Reply to Motion to Dismiss and Notice of First Amended Complaint (Dkt. # 20), in

which plaintiff states that it filed the First Amended Complaint "to correct alleged

technical difficulties raised in PCNA's Motion to Dismiss" (*id.,* ¶ 3) and argued that the

motion to dismiss should be denied as moot because the amended complaint became

the operative pleading.

On November 21, 2005, defendant filed its Motion to Dismiss the Amended

Complaint (Dkt. # 25), which incorporated the arguments made in its motion to dismiss

the original complaint.  The next day, defendant filed a Reply in Further Support of Its

2

Motion to Dismiss (Dkt. # 27), which argues that plaintiff's filing of the First Amended Complaint did not moot the arguments made in defendant's Motion to Dismiss (*id.* at 1-4) and therefore they still apply to the claims for relief contained in the First Amended Complaint. The reply also argues that the First Amended Complaint fails to state a claim for a *per se* violation of the Sherman Act (*id.* at 4-12), and therefore those antitrust claims should also be dismissed under Rule 12(b)(6).

On December 12, 2005, plaintiff filed a substantive Response in Opposition to PCNA's Motion to Dismiss the Amended Complaint (Dkt. # 28). On January 6, 2006, Defendant filed its Reply in Support of its Motion to Dismiss Amended Complaint (Dkt. # 32).

As a preliminary matter, the Court finds that plaintiff's filing of the First Amended Complaint after defendant filed its motion to dismiss does not moot the arguments raised in the motion to dismiss, particularly because defendants assert the First Amended Complaint has the same shortcomings raised in its motion made with respect to the original pleading. *See e.g. Koch v. United States,* 822 F. Supp. 1517, 1518 (D. Colo. 1993) (court may consider a motion to dismiss as being addressed in an amended complaint to the extent defects raised in the motion remain in the new pleading.). Moreover, as noted above, plaintiff has filed a substantive response to the arguments raised in both the motion to dismiss and the motion to dismiss the First Amended Complaint. Thus, the Court will consider all the grounds asserted in both of defendant's motions to dismiss.

## II.    STANDARD OF REVIEW

A cause of action will be dismissed for failure to state a claim upon which relief

can be granted pursuant to F.R.Civ.P. 12(b)(6) only when it appears beyond doubt that

the plaintiff can prove no set of facts in support of the theory of recovery that would

entitle that party to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Maher v.

Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is

dispositive.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  The purpose of

Rule 12(b)(6) motions is to test "the sufficiency of the allegations within the four corners

of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d

337, 340 (10th Cir. 1994).  In ruling on a motion to dismiss, a court "must construe the

complaint in favor of the complaining party," *State of Utah v. Babbitt*, 137 F.3d 1193,

1204 (10th Cir. 1998), and must accept a plaintiff's well-pled averments as true,

construing all reasonable inferences in favor of the plaintiff.  *City of Los Angeles v.

Preferred Communications, Inc.*, 476 U.S. 488, 493 (1986); *Mitchell v. King*, 537 F.2d

385, 386 (10th Cir. 1976).

## III.    PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's 84-paragraph First Amended Complaint alleges great detail regarding

the attempted sale of the Stammler Porsche dealership to plaintiff in 2005, and the

asserted reasons for the sale not reaching fruition, but the facts pertinent to the

pending motions can be set forth in summary fashion.

On February 22, 2005, plaintiff entered into a written Asset Purchase Agreement

with Stammler that provided for the sale of Stammler's Porsche dealership and its

relocation from central Boulder, Colorado to a location on the Boulder turnpike near Flatiron Crossing where plaintiff was already operating an auto dealership selling Mercedes brand cars (Amended Complaint, ¶¶ 2, 27).  Pursuant to Stammler's Porsche dealership contract with defendant, sale of the dealership is subject PCNA's prior written approval which may be withheld only due to specified criteria in the dealership contract, including consideration of the successor owner's qualifications (*id.*, ¶ 22).

According to the Amended Complaint, defendant was initially favorably disposed to the transfer of the Porsche dealership to plaintiff, as well as the relocation to the Flatiron Crossing site (*id.*, ¶¶ 29-30).  The Flatiron Crossing site is within the primary area of responsibility specified in Stammler's Porsche dealership contract (*id.*, ¶¶ 2, 14, 23).  However, on March 18, 2005 plaintiff was advised that PCNA would not approve the transfer of the Stammler dealership to plaintiff (*id.*, ¶ 37).  According to plaintiff, the transfer was disapproved because PCNA wanted to protect other Denver-area Porsche dealers from competition, and was concerned that plaintiff's Mercedes sales had hurt other Mercedes dealers (*id.*, ¶ 38).  The plaintiff alleges that the two other Porsche dealers "pressured and conspired with PCNA to boycott" plaintiff and block the sale of Stammler's dealership "in order to maintain their market sharing and price agreement and to avoid competition from" plaintiff (*id.*, ¶ 36).

Plaintiff alleges there followed a lengthy exchange of communications regarding the reasons given by PCNA for not approving the relocation of the Stammler dealership, as well as meetings held between the parties to discuss PCNA's refusal including requests to reconsider (*id.*, ¶¶ 39-51; 53-58).  Ultimately, plaintiff alleges,

5

PCNA refused to approve the transfer but acknowledged to Stammler that it would consider his buy-sell proposal "as long as any relocation proposal was for the Boulder area, preferably as close to your current location as possible." (*Id.,* ¶ 59).

As noted, plaintiff alleges that such conduct violates Section 1 of the Sherman Act and the Colorado Antitrust Act, specifically alleging that "PCNA, in concert with the Denver Porsche dealers, engaged in an unreasonable restraint of interstate trade or commerce in the Denver/Boulder market for Porsche cars, resulting in a *per se* violation of the Act." (*Id.,* ¶¶ 64, 69).  Plaintiff further avers that such actions had anticompetitive effects and the object of its actions were improper and illegal, and that plaintiff was injured in its business as a result (*id.,* ¶¶ 65-66; 70).   As a third claim plaintiff asserts that defendant's conduct knowingly caused Stammler not to perform his contract with plaintiff or improperly interfered with Stammler's performance of his contract (*id.,* ¶¶ 74-75).  Finally, plaintiff claims that PCNA's refusal to approve the transfer was an unreasonable refusal in violation of the Colorado Automobile Dealers Act, C.R.S. §§ 12-6-108, 12-6-120 and 12-6-122 (*id.,* ¶¶ 79, 83).

## IV.   DEFENDANT'S MOTIONS

Defendant's Motion to Dismiss and Motion to Dismiss the Amended Complaint, collectively, argue that all four of plaintiff's claims for relief are subject to dismissal under Rule 12(b)(6) for failure to state claims for relief.

Defendant asserts that plaintiff lacks standing to assert a claim under the Colorado Automobile Dealers Act, or otherwise fails to assert a cognizable claim under the Act, because plaintiff itself never became a franchisee of defendant and was at

most a "prospective franchisee."  (Motion to Dismiss at 5-11; Defendant's Reply on Motion to Dismiss Amended Complaint at 11-14).

Defendant goes on to contend that plaintiff's antitrust claims fail, under both the federal and state statutes, because a manufacturer's exercise of its rights under a franchise location clause is not an unreasonable restraint of trade as a matter of law (Motion to Dismiss at 15-20) and because plaintiff did not allege that PCNA or its dealers have "market power in the relevant market."  (*Id.* at 20-22).   With respect to the Amended Complaint, defendant further argues that it is subject to dismissal because it fails to allege a "*per se*" antitrust violation (Defendant's Reply in Further Support of its Motion to Dismiss, cited earlier at p. 2), and because dealer exclusion is not unlawful without a price-fixing agreement and none is alleged here (Defendant's Reply on Motion to Dismiss Amended Complaint at 2-14).

Defendant further argues that plaintiff's claim for tortious interference with contract and prospective business advantage is barred because such a claim cannot be based on a refusal by PCNA to enter into a contract with plaintiff, nor can defendant be held liable for "interfering with a relationship to which it is itself a party."  (Motion to Dismiss at 11-14; Defendant's Reply on Motion to Dismiss Amended Complaint at 14-17).

## V.     ANALYSIS

### A.     Plaintiff's Claim Under the Colorado Automobile Dealers Act

Plaintiff alleges that the unlawful and unreasonable refusal of PCNA to approve the sale and transfer and relocation of the Stammler Porsche dealership to plaintiff

constitutes a violation of the Colorado Automobile Dealers Act (Amended Complaint,

¶ 83).  Although the complaint is not specific as to exactly which provision of the statute

has been allegedly violated, plaintiff is apparently averring that defendant violated

C.R.S. § 12-6-120(1)(i), which provides, in pertinent part, that it is "unlawful" for an auto

distributor "[t]o refuse to approve, unreasonably, the sale or transfer of the ownership

of a dealership  by sale of the business."  C.R.S. § 12-6-122(3) states:

> If any licensee suffers any loss or damage by reason of
> any unlawful act as provided in section 12-6-120(1), such
> licensee shall have a right of action against such manu-
> facturer, distributor, or manufacturer representative.  In
> any court action wherein a manufacturer, distributor, or
> manufacturer representative has been found liable in
> damages to any licensee under this part 1, any licensee
> so damaged shall also be entitled to recover reasonable
> attorney fees as part of his or her damages.

Plaintiff seeks damages under the latter section of this statute (Amended

Complaint, Prayer for Relief, at 17).  For the reasons set forth below, the Court agrees

with defendant that Plaintiff S. J. Glauser DCJB, L.L.C. has not stated a claim under

this statute and therefore the Fourth Claim for Relief in the Amended Complaint must

be dismissed.

First, the above quoted language from section 122 of the statute plainly provides

that the entity or person having the right of action under that statute must be a

"licensee."  Plaintiff does not allege that it is a licensee under the statute.  Plaintiff

instead alleges that S. Jerry Glauser, an individual who apparently is the owner of the

plaintiff limited liability corporation (*see* Amended Complaint, ¶ 7), is a licensee within

the meaning of the statute (Amended Complaint, ¶ 79).  But Mr. Glauser is not the

named plaintiff, nor is he the party to the contract with Stammler (Amended Complaint, ¶ 27).  Accordingly, because the statute provides only for claims by licensees, the claim of Plaintiff S. J. Glauser DCJB, L.L.C. under the statute must be dismissed.  *See e.g. Dennis Davis Auto Group, Inc. v. Mazda Motor of America, Inc.*, Civil Action No. 97-WY-1960-WD (D. Colo. 1999), slip op. at 7-8.

Moreover, even if the named plaintiff, S. J. Glauser DCJB, L.L.C., had been alleged to be the "prospective licensee" with respect to the sought after Porsche dealership, the Court would nonetheless find that such a claim under the statute is subject to dismissal.  As found by Judge Matsch in *Empire Datsun, Inc., v. Nissan Motor Corporation in U.S.A.*, Civil Action No. 82-M-1027, 1984 U.S. DIST. LEXIS 18092 (D. Colo. 1984), the reference to "licensee" in C.R.S. § 12-6-122(3) does not include a prospective licensee seeking an auto franchise.  1984 U.S. DIST. LEXIS 18092 at *5-7.  As Judge Matsch concluded, there is no reason to create an implied right of action under this statute when the express rights of action are well defined.  *Id.* at 4.

Plaintiff also argues that because Mr. Glauser is a licensee with respect to the Mercedes dealership, he has standing to sue, as the Act confers standing on "any licensee."  (Plaintiff's Response at 24).  Even if Mr. Glauser were the plaintiff in this case (which he is not), the Court would still not find that he had standing in this case.  It is apparent that the effect of C.R.S. § 12-6-122(3) is to confer rights upon auto dealer licensees who suffer loss or damage as a result of the performance of any of the various unlawful acts listed and proscribed by C.R.S. § 12-6-120(1).  The apparent purpose for making unlawful the acts listed in C.R.S. § 12-6-120(1) is, in part, to protect

9

a motor vehicle dealer (or licensee) from the unequal bargaining power that may be held by the automobile manufacturer or distributor whose product the licensee is selling.  As stated by Judge Matsch, the statute is expressly directed to those abuses of the manufacturer-dealer relationship that derive from the manufacturer's superior economic position.  *Empire Datsun, Inc., supra*, 1984 U.S. DIST. LEXIS at 8-9.  The statute is also intended to protect the public from the termination of motor vehicle dealers without good cause by manufacturers because such termination may jeopardize "[p]roper motor vehicle service."  *See* C.R.S. 12-6-101(1)(b).  This latter protection only arises in a context when the "protected" dealer is a dealer servicing vehicles of the manufacturer seeking to terminate it, not vehicles of another manufacturer.

To hold that the provisions of C.R.S. § 12-6-122(3) permit "any" individual licensed dealer, such as Mr. Glauser, to sue over a manufacturer's refusal to transfer a dealership as violative of C.R.S. § 12-6-120(1)(i) when the licensee has no ongoing relationship with the manufacturer, but simply because the licensee holds an auto dealer's license, would expand the statute beyond its logical purpose.  Such a construction as offered by plaintiff would arguably confer a right on any licensee to challenge any refusal of any manufacturer to transfer a dealership to anyone, even if the licensee is tangentially affected by the dealership whose transfer is sought.

Conferring such a broad right on licensees generally, when no such right is conferred on the public at large, does not appear to be a reasonable purpose of the statute.[1]

Accordingly, the Court finds that plaintiff's Fourth Claim for Relief alleging a violation of the Colorado Automobile Dealers Act must be dismissed.

### B.    Plaintiff's Antitrust Claims

The Plaintiff's First and Second Claims for Relief in the First Amended Complaint purport to state antitrust claims under Section 1 of the Sherman Act and the Colorado Antitrust Act using essentially identical language.   Defendant contends that the state law antitrust claims are governed by the same principles of law applied in federal antitrust cases (Defendant's Motion at 15, n.7).   Plaintiff does not appear to disagree with this assertion, as it argues both of its antitrust claims under one heading in its response brief (Plaintiff's Response at 6).   The Court agrees that federal cases interpreting the Sherman Act provide guidance for analysis of claims brought under the state statute, and therefore the two claims for relief will be treated together.

Defendant contends that under applicable federal decisions an automobile manufacturer's exercise of its rights under a franchise location clause cannot be a violation of Section 1 of the Sherman Act as a matter of law, citing to *Salco Corp. v. General Motors Corp., Buick Motor Div.*, 517 F.2d 567, 576 (10th Cir. 1975). Defendant also argues that under the Supreme Court decision in *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36 (1977), a case involving restrictions on a dealer's

---

[1]   The only private right of action conferred on the general public by C.R.S. § 12-6-122(2) to sue manufacturers or distributors is for losses suffered by reason of a violation of C.R.S. § 12-6-120(1)(a), which deals with willful failures to perform under written warranties.

locations, vertical nonprice restraints on intrabrand competition are judged under the "rule of reason" standard.  Defendant asserts that franchise location restrictions have been held to be procompetitive and therefore not unreasonable under Section 1 (Defendant's Motion at 15-20).[2]

Defendant is correct that under the principles set forth in the *Sylvania* decision, and under earlier cases as well, a manufacturer's unilateral exercise of its rights under a franchise location clause may not violate Section 1 of the Sherman Act.  However, as stated by the Supreme Court in *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 760-61 (1984), a vertical restraint case involving a dealer termination, there are two important distinctions at the center of any distributor termination or vertical restraint case.  First, there is a distinction between independent and concerted action. Independent action is not proscribed by Section 1 and a manufacturer generally has a right to deal with whomever it likes, as long as it does so independently.  465 U.S. at 761.  *See also United States v. Colgate*, 250 U.S. 300, 307 (1919); *Gregory v. Ft. Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1200 (10th Cir. 2006) ("unilateral conduct, regardless of its anti-competitive effects, is not prohibited by § 1 of the Sherman Act."  Internal quotation marks omitted.)

---

[2]   Despite defendant's assertion as to the impact of the *Salco* and *Sylvania* cases, the Supreme Court itself stated in *Continental T.V.* that "[t]his Court has never given plenary consideration to the question of the proper antitrust analysis of location restrictions," acknowledging without necessarily embracing as a holding that "[s]ince the decision in [*United States v. Arnold Schwinn & Co.*, 388 U.S. 365 (1967)] location restrictions have been sustained by three Courts of Appeals," including the decision in *Salco*.  433 U.S. at 42 n.11.

Second, there is a distinction between concerted action to set prices and concerted action on nonprice restrictions.  The former are *per se* illegal; the latter are judged by a "rule of reason" analysis.  *Id.*  As stated by the Tenth Circuit in *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir.), *cert. denied*, 506 U.S. 999 (1992), "[v]ertical restraints are not illegal *per se* unless they include some agreement as to pricing levels."

Although the *Spray-Rite* decision addressed vertical restraints in the context of a dealer termination situation, the same two distinctions apply to a situation involving enforcement of a franchise location clause, as such activity may well constitute a refusal to deal.  Indeed, in its reply brief, defendant cites to and relies upon the decision in *Monsanto (see* Defendant's Reply at 3).  Thus the first question is whether the allegations of the First Amended Complaint assert only unilateral action or concerted action, and if concerted action is alleged, whether the averments also set forth pricing or other activities that constitute a *per se* violation.

Defendant asserts that it "has not done anything other than insist on its contractual right to approve any new location for the [Stammler] dealership" and therefore no violation of Section 1 is stated (Defendant's Motion at 20).  Plaintiff, however, has alleged that two Denver Porsche dealers, "Prestige and Stevinson Imports[,] have engaged in a market allocation agreement, dividing up the Denver/Boulder Porsche market and not competing on price, resulting in higher prices for Porsche cars" and that "the two Denver Porsche dealers pressured and conspired with PCNA to boycott Glauser and block the sale of Stammler's dealership in order

13

to maintain their market sharing and price agreement and to avoid competition from

Glauser." (Amended Complaint, ¶¶ 35, 36).  In setting forth its claims for relief, plaintiff

also alleges that  "PCNA, in concert with the Denver Porsche dealers, engaged in an

unreasonable restraint of interstate trade or commerce in the Denver/Boulder market

for Porsche cars, resulting in a *per se* violation of the Act." (*id.,* ¶¶ 64, 69).  Plaintiff

further alleges that such actions had anticompetitive effects and the object of its actions

were improper and illegal, and that plaintiff was injured in its business as a result (*id.,*

¶¶ 65-66; 70).[3]

It may well be, as defendant asserts, that it acted alone in refusing to approve

the transfer of the Stammler dealership but in ruling on a motion to dismiss under

Rule 12(b)(6) the Court must accept the factual allegations of the attacked pleading

as true.  If, as plaintiff avers, the defendant acted "in concert" with the other Porsche

dealers to deny the transfer of the Stammler dealership, then it did not act unilaterally

and plaintiff has alleged a conspiracy.  To be sure, as defendant argues if the evidence

ultimately shows only that PCNA acted in response to "complaints" from the other

dealers, there would be no agreement between.  To go forward under an antitrust

conspiracy theory, there must be evidence to establish an inference that the

manufacturer and the other distributors were not acting independently.  *Monsanto Co.,*

---

[3]   The Court notes that the allegations in Paragraph 35 of the Amended Complaint regarding the alleged "market allocation agreement" between the Porsche dealers as to dividing up the market and not competing on price, the allegation in Paragraph 36 of the Amended Complaint of a "conspiracy" between PCNA and the dealers, and the allegations in Paragraphs 64 and 69 of the Amended Complaint, alleging *per se* violations, were not pled in the original complaint.

*supra*, 465 U.S. at 763-64.  If, however, such an intrabrand agreement involving non-price restriction were found, the conduct would be tested by the "rule of reason" and if it resulted in an unreasonable restraint of trade, a Section 1 violation may have occurred.

In response to plaintiff's original complaint, defendant argued that even if plaintiff had alleged a conspiracy it must also demonstrate that the conspiracy injured competition in the relevant market to make out a violation based on the "rule of reason." (Defendant's Motion at 20).  Defendants asserted that plaintiff has failed to allege that PCNA or its dealers "had the requisite power in the relevant market for its vertical, non-price restriction on intrabrand competition to be an unreasonable restrain on commerce."  (*Id.*)

While the concept of a defendant's market power in the relevant market is more familiar to cases brought under Section 2 of the Sherman Act, alleging monopolization of a relevant market, pleading and proof of market power are also necessary in making a Section 1 case where it is alleged that the defendant's conduct constituted an unreasonable restraint of trade.  As the Tenth Circuit has stated in a Section 1 context, "[r]ule of reason analysis first asks whether the offending competitor, here Visa USA, possesses market power in the relevant market where the alleged anticompetitive activity occurs.  The answer to that question may end the suit or permit an abbreviated rule of reason inquiry."  *SCFC ILC, Inc v. Visa USA, Inc.* 36 F.3d 958, 965 (10th Cir. 1994), *cert. denied,* 515 U.S. 1152 (1995).

Plaintiff's response, filed after it filed its First Amended Complaint, does not argue that averments regarding the relevant market and market power are not required

in a "rule of reason" case brought under Section 1, nor does it argue that such allegations are found in its Amended Complaint.  Instead, plaintiff now asserts that it "is not alleging a rule of reason case" at all (Plaintiff's Response at 8).  Rather, it claims that it has sufficiently pled a *per se* violation, and under such theory market averments are not needed because harm to competition is presumed.  As noted above, plaintiff's original complaint did not expressly allege a *per se* violation.  In support of this argument, plaintiff in its Response asserts that it has alleged "upwards of four *per se* antitrust violations:  a conspiracy to fix prices and allocate the Denver/Boulder market, a group boycott, and a vertical restraint imposed by PCNA upon Glauser with a price-fixing motive."  (*Id.* at 10).

Defendant, replying to what it describes as plaintiff's "moving target" *per se* claims, argues that the allegations of the First Amended Complaint do not sufficiently allege facts to support any of the four *per se* theories identified by plaintiff.

Defendant first points out that there is no allegation that PCNA knew of or entered into a price fixing or market allocation agreement (Defendant's Reply at 2, 7).  A close reading of the Amended Complaint reveals that plaintiff alleges that the two Denver Porsche dealers other than Stammler engaged in a market allocation agreement, dividing up the market and not competing on price (Amended Complaint, ¶ 35), but there is no assertion there that PCNA was a party to the purported market allocation or price-fixing agreement even if one existed among the Denver Porsche dealers.  The Amended Complaint further alleges that the Denver dealers "pressured and conspired with PCNA to boycott" plaintiff in order to "maintain **their** market sharing

16

and price agreement and to avoid competition from" plaintiff, (Amended Complaint, ¶ 36; emphasis added), but again that paragraph does not specifically allege that PCNA was party to the purported market sharing or pricing agreement.  Reasonably read, the paragraph states only that PCNA conspired with the other dealers to deny the transfer of the dealership to plaintiff.  Indeed, plaintiff seems to acknowledge that it has not pled an express agreement by PCNA to fix prices, for it argues in its response brief that because PCNA received monthly sales reports showing the numbers of cars sold by its dealers, it is a "reasonable inference" that PCNA was aware of and complicit in the collusion and price-fixing within the Denver/Boulder market (Plaintiff's Response at 14).

Even on a Rule 12(b)(6) motion, this Court is not inclined to engage in making such an inference in the absence of an express allegation, for as the Supreme Court has stated, it is not proper on a Rule 12(b)(6) motion to assume that the plaintiff can prove facts not alleged or that a defendant has violated the antitrust laws in ways not alleged.  *See Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Thus the Court finds that the Amended Complaint does not allege defendant's assent or agreement in either of plaintiff's first two purported *per se* violations of a conspiracy to fix prices and to allocate the Denver/Boulder market.

As the Tenth Circuit has stated, a group boycott is another form of *per se* violation of Section 1.  *TV Communications Network, Inc. supra,* 964 F.2d at 1027. However, that case also states that a group boycott can only exist between conspirators at the same level.  *Id.*, citing to *Westman Commission Co. v. Hobart Int'l,*

17

*Inc.*, 796 F.2d 1216, 1224, n.1 (10th Cir. 1986), *cert. denied*, 486 U.S. 1005 (1988).  In

*Westman*, the court explained that "[f]or a group boycott to exist, there must be an

agreement among conspirators whose market positions are horizontal to each other.

There is no evidence in the record of any horizontal combination; Hobart was the only

manufacturer that refused to deal with Westman."  796 F.2d at 1224, n.1.  Here, too,

where PCNA is the only manufacturer that allegedly refused to deal with plaintiff, it

would appear that there is no horizontal combination alleged at that level.

Yet, *Westman* also points out in that footnote that in *United States v. Topco*

*Assocs., Inc.*, 405 U.S. 596, 602 (1972) the Supreme Court held that a cooperative

association of supermarkets violated the Sherman Act when it gave association

members a "veto of sorts" over the admission of new members.  *Id.*  The *Westman*

decision nonetheless found in that case that Nobel, the dealer in competition with

plaintiff, "had no such 'veto power' over Hobart's distributorship decisions.  Hobart's

refusal to deal with Westman was a vertical restraint, as opposed to a 'horizontal

restriction among ostensible competitors,' as was the case in *Topco*."  *Id.*

Although not a direct holding by the Tenth Circuit, the implication of this analysis

is that if two or more distributors are given a "veto power" over the manufacturer's

distributorship decisions, even though the manufacturer and the plaintiff are not

technically horizontal to each other, the exercise and acceptance of the "veto power"

may be found to be a horizontal restriction among ostensible competitors, subject to

analysis as a group boycott under a *per se* rule.  In *Key Financial Planning Corp. v.*

*ITT Life Ins. Corp.*, 828 F.2d 635, 641 (10th Cir. 1987), the Tenth Circuit summarized

*Westman*, stating: "In *Westman*, we stated that in order for a group boycott to exist, 'there must be an agreement among conspirators whose market positions are *horizontal* to each other. While the competitors need not be at the same market level as the plaintiff, there must be concerted activity between two or more competitors at same market level." (Footnote omitted; emphasis in original).

Although plaintiff cites to no Tenth Circuit case upholding a *per se* claim of a group boycott in which competing distributors "vetoed" a competitor, it does cite to authority from other circuits that recognize the applicability of the *per se* rule when competing distributors exercise a "veto power" over a distributorship decision. Response at 15; *see Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 462 (3d Cir. 1998) and cases cited therein. As *Rossi* states, "[t]he common principle we glean from these cases is that a conspiracy is horizontal in nature when a number of competitor firms agree with each other and at least one of their common suppliers or manufacturers to eliminate their price-cutting competition by cutting his access to supplies." *Id. See also Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1376 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

Defendant urges the Court not to follow the Third Circuit cases as "contrary to the Tenth Circuit and majority view" and inconsistent with the Supreme Court's decision in *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 726 (1988), which states that "departure from [the rule of reason] standard must be justified by demonstrable economic effect . . . rather than formalistic distinctions [and] that interbrand competition is the primary concern of the antitrust laws." (Defendant's Reply

19

at 5-6).  Defendant urges that there is no difference in "demonstrable economic effect" if two intrabrand dealers, rather than one, urge a reputed price-cutter be excluded, and thus the formalistic difference recognized by the Third Circuit (and perhaps by the footnote in *Westman*) should not render this case subject to *per se* treatment (*id. at 6*).

This Court finds, however, that it need not choose between the approach of the Third Circuit or the arguably different approach of the Tenth Circuit, which defendant claims rejects the *per se* standard applied in *Rossi*.  Rather, the Court finds that plaintiff's Amended Complaint fails to allege facts essential to a claim of group boycott under any approach.

This is so because even in a case involving a group boycott or concerted refusal to deal, the "plaintiff seeking application of the *per se* rule must present a threshold case that the challenged activity falls into a category likely to have predominantly anti-competitive effects."  *Northwest Wholesale Stationers, Inc., v. Pacific Stationary & Printing Co.*, 472 U.S. 284, 298 (1985).  The mere allegation of a concerted refusal to deal "does not suffice because not all concerted refusals to deal are predominantly anticompetitive," and the plaintiff must make a showing that the excluding group "possesses market power or unique access to a business element necessary for effective competition."  *Id.*  Or, as stated in *Federal Trade Commission v. Indiana Federation of Dentists*, 476 U.S. 447, 458 (1986), "the category of restraints classed as group boycotts is not to be expanded indiscriminately, and the *per se* approach has generally been limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor."  And as

20

concluded in *Westman, supra*, "[b]ecause we believe that manufacturers should be free to choose and terminate their distributors free of antitrust scrutiny so long as their motivation does not involve illegal pricing or tying arrangements, we hold that section one of the Sherman Act does not proscribe refusals to deal absent a showing of monopoly or market power on the part of the manufacturer."  796 F.2d at 1229.

Although this case is only at the pleading stage, and evidence of market power on the part of the manufacturer may not now be required, here, as noted above, the Amended Complaint does not even allege a relevant market or market power in the hands of PCNA.  Absent such allegations, plaintiff has failed to allege a group boycott that constitutes a *per se* violation of Section 1, and as noted plaintiff concedes that it is not pursuing any antitrust claim based on the "rule of reason."

Finally, the plaintiff's fourth supposed *per se* violation is allegedly a "vertical restraint imposed by PCNA upon Glauser with a price-fixing motive." (Plaintiff's Response at 10).  The Court, however, finds no fact allegations in the Amended Complaint that support such a theory, nor any factual allegations that PCNA had any ability, or made any attempt, to impose a vertical price restriction on Glauser as it never became a Porsche dealer under a relationship with PCNA.

Accordingly, given plaintiff's concession that it is not alleging a "rule of reason" case, and that it is relying solely on antitrust theories purporting to state *per se* violations, this Court finds that the Amended Complaint fails to state claims for relief under either Section 1 of the Sherman Act or the Colorado Antitrust Act.

**C.     Plaintiff's Claim for Tortious Interference With Contract and Prospective  Relations**

The elements of the common law tort of intentional interference with contract as applied in Colorado are set forth in *Westfield Dev. Co. v. Rifle Inv. Associates*, 786 P.2d 1112, 1117 (Colo. 1990) by reference to the Restatement (Second) of Torts, § 766A (1979), and are described as follows:

> One who *intentionally and improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him. (Emphasis in original).

The *Westfield* decision specifies that the interference must thus be both intentional and improper.  It lists the following factors to be considered in determining whether a defendant's intentional interference is improper or not:

> (a)     the nature of the actor's conduct,
> (b)     the actor's motive,
> (c)     the interests of the other with which the actor's conduct interferes,
> (d)     the interests sought to be advanced by the actor,
> (e)     the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f)     the proximity or remoteness of the actor's conduct to the interference, and
> (g)     the relations between the parties.

*Id.* at 1118 citing to *Trimble v. City & County of Denver*, 697 P.2d 716, 726 (Colo. 1985).

Defendant PCNA first argues that it cannot be "held liable for interfering with a relationship to which it is itself a party" (Defendant's Motion at 11-12, citing to *Colorado*

*National Bank of Denver v. Friedman,* 846 P.2d 159, 170 (Colo. 1993)).  While that case may stand for the proposition cited by defendant, it does not apply to the facts here.  Plaintiff alleges that PCNA interfered with its agreement with Stammler (Amended Complaint, ¶ 73).  PCNA was not a party to that agreement.  To be sure, its approval of the transfer of the franchise was required by the Stammler/Glauser Asset Purchase Agreement.  It was the alleged wrongful withholding of this approval that interfered with Stammler's performance, causing alleged injury to plaintiff.  But such a scenario does not make PCNA a party to the Stammler/Glauser agreement.  Thus, unlike the bank in *Colorado National Bank*, this Court cannot find that PCNA is a representative or agent of one of the parties, or that it was obligated to perform one of the parties' obligations under the agreement, so as to preclude a tortious interference claim against it.  *See* 846 P.2d at 171-72.

PCNA also contends that plaintiff's Amended Complaint fails to state a claim for intentional interference because its conduct in refusing to approve the transfer of the Stammler dealership was not "improper" as it was merely exercising its right under its dealership agreement with Stammler (Defendant's Motion at 12-14).  Plaintiff, on the other hand, alleges that PCNA's conduct was improper because it interfered with Stammler's performance of the contract (Amended Complaint, ¶ 75).  The Amended Complaint does not expressly allege, however, what about defendants' conduct was improper.  In support of its allegations, plaintiff argues in its Response that defendant's conduct was improper because it violates the antitrust laws (Plaintiff's Response at 19-20) and because the reasons given by PCNA for not approving the transfer were

23

pretextual and therefore not truly reflective of the justifications for nonapproval of transfers permitted by the dealership agreement (Plaintiff's Response at 20-22).

Although plaintiff cites to no case law authority for the proposition that conduct allegedly violative of the antitrust law is improper for purpose of the tort of intentional interference, it does correctly point out that a comment to Section 767 of the Restatement (Second) of Torts lists violation of antitrust laws as unlawful conduct that may be found to be improper.[4]  However, as found above, the plaintiff failed to properly allege a *per se* violation of the antitrust laws by defendant.  Moreover, although the Amended Complaint arguably alleges an antitrust violation under the "rule of reason," plaintiff asserts in its response that it is not pursuing a "rule of reason" case.

In addition, another comment to Section 767 of the Restatement (Second) of Torts suggests that interference may be improper if the actor's motive was a desire to interfere with the plaintiff's contract, rather than to further its own interests.[5]  Plaintiff argues that PCNA's stated reasons for not approving the transfer were not based on a proper assertion of its contractual rights with Stammler.  However, even if as plaintiff

---

[4]  The comment on Clause (a) of Section 767 ("the nature of the actor's conduct") states: "Conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper. This may be true, for example, of conduct that is in violation of antitrust provisions or is in restraint of trade or of conduct that is in violation of statutes, regulations, or judicial or administrative holdings regarding labor relations."

[5]  The comment on Clause (b) of Section 767 ("the actor's motive") specifically states: "In determining whether the interference is improper, it may become very important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations.  If this was the sole motive the interference is almost certain to be held improper.  A motive to injure another or to vent one's ill will on him serves no socially useful purpose."

24

alleges, defendant's motive in denying the transfer of the dealership was to preclude plaintiff from operating a Porsche dealership at the Flatirons location, it is the equivalent of saying that PCNA's motive was to prefer that its Boulder dealer operate out of a "central" Boulder location, and not out of the Flatirons location.  As the Amended Complaint itself acknowledges, PCNA was not precluding a transfer of the dealership to plaintiff, provided the operation would remain as close to the current location as possible (Amended Complaint, ¶ 59).  Such an acknowledged and potentially valid business position by PCNA as a distributor of Porsche automobiles and PCNA's contractual prerogative negotiated with Stammler long before the facts underpinning plaintiff's alleged claims arose appears to result in no material contractual interference claim being stated as a matter of Colorado tort law.  Moreover, as Judge Matsch recognized, no prospective franchisee has a reasonable expectation of fruition in these circumstances.  *See Empire Datsun, supra*, 1984 U.S. DIST. LEXIS 18092 at 23-26.  Ultimately, the Complaint as amended fails to plead that PCNA was intentionally trying to harm plaintiff but rather that plaintiff was injured by PCNA's alleged anticompetitive conduct that was either insufficiently pled or not pursued.

For these reasons, the Court finds that plaintiff's Third Claim for Relief fails to state a claim for intentional interference with contract and must be dismissed pursuant to Rule 12(b)(6).

**VI.      CONCLUSION**

For the reasons set forth above, defendant's Motion to Dismiss (Dkt. # 13)

and Defendant PCNA's Motion to Dismiss the Amended Complaint (Dkt. # 25) are

GRANTED and plaintiff's Amended Complaint is DISMISSED with prejudice.

DATED:  June 30, 2006

BY THE COURT:

*s/ Phillip S. Figa*
_____

Phillip S. Figa
United States District Judge